BEA, Circuit Judge,
concurring:
I join all of the majority opinion except for Section III, which analyzes the local and state requirements that official ballot initiative proponents be electors, thereby excluding associations. Although I concur in the result of Section III, I see the issue differently. I believe that the majority opinion employs an incorrect test to determine whether acting as an official ballot initiative proponent is a legislative act with expressive content or an expressive act with legislative effect, and thus whether the elector requirement burdens any First Amendment rights. The test should not be whether a particular act has legislative effect or legislative character. The correct test, as stated in Doe and Carrigan, asks whether the individual — here the ballot initiative proponent — is exercising his own power, as does a ballot initiative signatory (Doe), or is exercising a governmental power that has been democratically apportioned to him, as does a legislator voting in a legislature (Carrigan). When I apply this test I conclude that acting as a ballot initiative proponent is an expressive act, despite its legislative effect, and is protected by the First Amendment. Therefore, the elector requirement implicates the First Amendment and must be so analyzed. Nonetheless, I conclude the elector requirement satisfies at least the exacting scrutiny test applied to state electoral regulations under the First Amendment, and therefore I concur with the opinion’s conclusion upholding the elector requirement.
I
A
The majority opinion incorrectly identifies what is the precise right sought to be vindicated by the appellants. In its Section III.B, the majority opinion suggests that the appellants seek “the legal authority attaching to the status of an official proponent.” Maj. Op. at 677. No, the precise right the appellants want is not merely an abstract “authority.” Put more simply and precisely, the appellants wish “to be initiative proponents.” Blue Br. at 6. Becoming an official ballot initiative proponent produces a particular quality of speech. When someone is qualified as an official proponent, he is able to speak from a particular vantage as an author of the proposal. The quality and impact of speech by official ballot initiative proponents is different from that of a mere member of the public. “Proponents” can be seen as sufficiently civic-minded to have taken the time and borne the cost to bring up a measure. They have also taken the risk of being identified with a particular political view. Because of their demonstrated interest and willingness to risk opprobrium, moreover, their speech is likely to carry greater weight once their position as ballot proponents is recognized. By restricting who may serve in this role, Chula Vista and California restrict the range of speech non-electors and associations can exercise.
The majority opinion also errs in holding that being an official ballot initiative proponent is a legislative act. The majority opinion holds that being an official ballot initiative proponent is legislative at core because California state cases and laws describe the ballot initiative proponent as akin to a legislator, and because the acts of a ballot initiative proponent are legislative in character and effect.
With respect, this test is mistaken. The Supreme Court has explicitly held that expressive acts can still be protected by *691 the First Amendment, even if they have a legislative effect under the state’s laws. Doe v. Reed, 561 U.S. 186, 194-96, 130 S.Ct. 2811, 177 L.Ed.2d 493 (2010).[1] Indeed, if having legislative effect could deprive an expressive act of First Amendment protection, then governments could limit political speech by granting legislative effect to particular speech acts. The majority opinion ignores the test the Supreme Court itself has already laid out in Doe and Corrigan to determine whether a particular political activity is speech protected by the First Amendment or is a legislative act with no First Amendment protection.
The Doe Court stated the general rule that “[a]n individual expressing] a view on a political matter” when participating in a political activity, whether or not it also happens to have a governmental effect. Id. at 194-95, 130 S.Ct. 2811. The Court held that “signing] a petition under Washington’s referendum procedure” was an example of an individual expressing a view on a political matter. Id. If the activity expresses a political view, then generally it “implicates a First Amendment right.” Id. at 195, 130 S.Ct. 2811. Moreover, the First Amendment still protects that expressive activity even if it has “legal effect in the electoral process”:
[Signing a referendum petition may ultimately have the legal consequence of requiring the secretary of state to place the referendum on the ballot. But we do not see how adding such legal effect to an expressive activity somehow deprives that activity of its expressive component, taking it outside the scope of the First Amendment.

Id.

Corrigan created an exception to this general rule. When an individual performs a legislative act through his office as legislator — such as a legislator voting in a legislature — that act is not protected by the First Amendment because:
a legislator’s vote is the commitment of his apportioned share of the legislature’s power to the passage or defeat of a particular proposal. The legislative power thus committed is not personal to the legislator but belongs to the people; the legislator has no personal right to it.
Nevada Comm’n on Ethics v. Carrigan, - U.S. -, 131 S.Ct. 2343, 2345, 180 L.Ed.2d 150 (2011). In other words, a legislative act is one that an individual performs not as an individual or as a “principal,” but as an elected representative, or an “agent” of the people, i.e. “a governmental act [an individual performs] as a representative of his constituents.” Id. at 2351 n. 5.
Carrigan stated that it was not in tension with Doe. Id. at 2351. The Carrigan Court described Doe as holding that “core *692 political speech,” such as signing a ballot initiative petition, “was not deprived of its protected status simply because, under state law, a petition that garnered a sufficient number of signatures would suspend the state law to which it pertained, pending a referendum.” Id. Such political speech, the Carrigan Court held, was distinguishable from the legislative, governmental act of a legislator voting in a legislature: “It is one thing to say that an inherently expressive act remains so despite its having governmental effect, but it is altogether another thing to say that a governmental act becomes expressive simply because the governmental actor wishes it to be so.” Id.
Likewise, even if an act is a legally effective part of the political process, it still may be an expressive act protected by the First Amendment. “[T]he State, having chosen to tap the energy and the legitimizing power of the democratic process, must accord the participants in that process the First Amendment rights that attach to their roles.” Doe, 561 U.S. at 195, 130 S.Ct. 2811 (internal quotation marks, ellipsis, and brackets omitted). Only if the act done is authorized by a governmental, democratically apportioned representative power does it cease to be a personal act and thereby cease to be protected by the First Amendment.
Thus, when a court must decide whether a political act is inherently expressive and therefore protected by the First Amendment or is a legislative, governmental act and therefore not at all protected by the First Amendment, the court must determine whether the act is more similar to the act in Doe (signing a ballot initiative) or the act in Carrigan (a legislator voting in a legislature). The relevant question is whether the politically expressive act is personal to the actor, or is merely exercised by him through democratic delegation of governmental power to him and therefore does not belong to him.
Applied here, this test reveals that the act of being a ballot initiative proponent, just like the signing of a ballot initiative proposal in Doe, is at its core expressive, not legislative, despite its legislative effect. An official ballot initiative proponent is neither an elected nor democratically appointed position. The proponent has volunteered to exercise his own power vested in him by California state law, Cal. Elec. Code § 9202(a). He does not exercise a power that has been democratically apportioned to him as an “agent” of a governmental body. Therefore, the Chula Vista and California elector requirements burden the First Amendment rights of those who desire to become official ballot initiative proponents. In other words, being a ballot initiative proponent is more like being a ballot initiative signatory (Doe) than it is like a legislator voting in a legislature ('Carrigan).
It may be argued that the electors of California, or those of Chula Vista, have “apportioned” to themselves the right to act as ballot initiative proponents, and thus that becoming the proponent of an initiative is the legislative act of an agent of the people. This argument would fail, however, because it is equally applicable to the ballot initiative signatories in Doe. The electors of Washington state “apportioned” to themselves the right to act as ballot initiative signatories just as the electors of California “apportioned” to themselves the right to act as ballot initiative proponents. The Supreme Court holding in Doe, however, shows that this level of “apportionment” does not convert the act from a personal, expressive one to a delegated, representative one. Therefore, when analyzed under the correct Doe-Carrigan framework, acting as an official ballot initiative proponent is a personal act of politi *693 cal expression that happens to have legislative effect, similar to acting as a ballot initiative signatory; it is not the governmental act of a democratically appointed agent of the people. The First Amendment therefore applies to any governmental restraints on such political expression.
B
Instead of applying the Doe-Carrigan framework to determine whether the activity at issue is protected by the First Amendment, the majority opinion applies its own test. It distinguishes between “the activities of an official proponent” and “serving as an official proponent (that is, having the legal authority attaching to official proponents).” Maj. Op. at 679. As the majority opinion puts it, just because “certain activities are expressive, it does not follow that the legal authority to engage in such activities is part of the freedom of speech. This ease presents that threshold issue.”[2] Maj. Op. at 680. Therefore, the majority opinion concludes, this case is controlled by Carrigan, and not by Doe: “Carrigan concerned whether the legal authority to exercise legislative power is protected by the freedom of speech, [while] Doe concerned the extent to which the exercise of legislative power is protected.” Maj. Op. at 681.
In other words, according to the majority opinion, if a given act is considered a speech act at core, as opposed to a legislative act, and thus is protected by the First Amendment, then governmental limits on how that speech is to be exercised would be analyzed under constitutional standards, but the First Amendment would provide no protection against governmental limits on who can exercise that speech. I see no constitutional basis for the distinction between possessing a right and exercising that right. Moreover, the majority opinion’s approach could allow governments to control the content of political speech by restricting the access to particular forms of political speech, and to avoid having those restrictions analyzed under the First Amendment.
Indeed, Citizens United refutes the majority opinion’s “threshold question” argument. The majority opinion here states that, because the state did not grant associations the right to be official ballot initiative proponents, the panel need not analyze the law under the First Amendment. Citizens United, on the other hand, examined the constitutionality of a statute and *694 found it unconstitutional precisely because associations were excluded from participating in a particular activity. Citizens United v. FEC, 558 U.S. 310, 130 S.Ct. 876, 175 L.Ed.2d 753 (2010). In Citizens United, 2 U.S.C. § 441b prevented associations from making expenditures in connection to an election to public office. The Supreme Court examined the “threshold question” that the majority opinion here discusses and held that “[pjremised on mistrust of governmental power, the First Amendment stands against attempts to disfavor certain subjects or viewpoints. Prohibited, too, are restrictions distinguishing among different speakers, allowing speech by some but not others.” Id. (internal quotation marks and citations omitted). “We find no basis,” the Court went on, “for the proposition that, in the context of political speech, the Government may impose restrictions on certain disfavored speakers.” Id. at 341, 130 S.Ct. 876. Thus, even the “threshold question” of who gets to participate in a particular speech act must be analyzed under the First Amendment.
Finally, under Citizens United, associations have the right to assert these First Amendment protections. Id. at 365, 130 S.Ct. 876 (“[T]he Government may not suppress political speech on the basis of the speaker’s corporate identity.”).
II
Because the majority opinion concludes that the elector requirement does not burden the First Amendment at all, it does not address what scrutiny should be applied to determine its constitutionality. Because I conclude that the elector requirement does burden the First Amendment, however, I now address the proper scrutiny to be applied.
Under Citizens United, it would seem at first blush that, because the “elector requirement” burdens political speech on the basis of the identity of the speaker, it should be analyzed under strict scrutiny. See Citizens United, 558 U.S. at 340, 130 S.Ct. 876 (“Laws that burden political speech are subject to strict scrutiny, which requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest.” (internal quotation marks omitted)).
The language of the Supreme Court in Doe, however, suggests an indeterminate but deferential level of scrutiny for restrictions in the ballot initiative process such as the elector requirement. The six-person majority in Doe stated:
[T]he electoral context is [not] irrelevant to the nature of our First Amendment review. We allow States significant flexibility in implementing them own voting systems.... The State’s interest in preserving the integrity of the electoral process is undoubtedly important. States allowing ballot initiatives have considerable leeway to protect the integrity and reliability of the initiative process, as they have with respect to election processes generally.
Doe, 561 U.S. at 197, 130 S.Ct. 2811 (internal quotation marks omitted); see id. at 212-13, 130 S.Ct. 2811 (Sotomayor, J., concurring) (“States enjoy considerable leeway to ... specify the requirements for obtaining ballot access.... As the Court properly recognizes, each of these structural decisions inevitably affects — at least to some degree — the individual’s right to speak about political issues and to associate with others for political ends. For instance, requiring petition signers to be registered voters ... no doubt limits the ability or willingness of some individuals to undertake the expressive act of signing a petition. Regulations of this nature, however, stand a step removed from the communicative aspect of petitioning, and the *695 ability of States to impose them can scarcely be doubted.”) (citations and internal quotation marks omitted) (emphasis added). Doe therefore suggests that regulations of the electoral process, such as the “elector” requirement, while burdening the First Amendment, are subject to a deferential level of scrutiny, less demanding than strict scrutiny. We must therefore conclude, on the basis of the deferential language in Doe, that not all political expression has the same protection, and that burdens that state and local governments impose on political expression while those governments are “implementing their own voting systems,” Doe, 561 U.S. at 197, 130 S.Ct. at 2819, must be analyzed under a level of scrutiny more deferential than strict scrutiny.
Considering the deferential language of Doe, and because the elector requirement burdens “core political speech,” McIntyre v. Ohio Elections Comm’n, 514 U.S. 334, 347, 115 S.Ct. 1511, 131 L.Ed.2d 426 (1995), the level of scrutiny used here should be exacting scrutiny, which requires a “substantial relation” between the elector requirement and a “sufficiently important” governmental interest. Doe, 561 U.S. at 195, 130 S.Ct. 2811.
The interest that California asserts as the basis for the “elector requirement” here is “that only the people themselves shall exercise the right of self-government reserved in the initiative.” California and Chula Vista assert an interest that only those with “skin in the game,” ie. electors, who will be affected by the measure, should initiate the referendum process. The California state and local governments want only civic-minded locals, who presumably would have knowledge of local affairs and would themselves be affected by the referendum, to participate in the initiative process. Otherwise, carpetbaggers, who themselves would not bear the full cost of initiating a proposal and who would not be burdened by the effects of the referendum, could hijack the initiative process and dictate a state’s referendum agenda. Considering the language of Doe, such an interest is “sufficiently important,” and thus satisfies that prong of the exacting scrutiny test.
The second part of the exacting scrutiny test requires that the elector requirement be “substantially related” to the governmental interest. The elector requirement could be more narrowly tailored to achieve its objective. In particular, the elector requirement is overinclusive, in that it prevents from being an official ballot initiative proponent an association made up entirely of electors, even though such an association would not detract from the governmental interest of insuring that only those with “skin in the game” initiate the referendum process. The elector requirement, therefore, because it is overinclusive, does not comply with the narrow tailoring requirement of strict scrutiny. See Citizens United, 558 U.S. at 340, 130 S.Ct. 876. Under Doe’s more deferential level of exacting scrutiny applied here, however, the elector requirement is substantially related to the governmental interest.[3] It ensures that only those with “skin in the game” will initiate the referendum process. Moreover, although it prevents electors from initiating ballot proposals in association with each other, it does not prevent them from doing so as individuals. Therefore, I conclude that the elector requirement satisfies exacting scrutiny; thus, I would reach the same outcome as the majority opinion.
Ill
Like the majority opinion, I think that the elector requirement does not violate *696 the Constitution. I, however, would follow closely the test articulated in Doe and Corrigan. This would ensure that core political expression is analyzed under the correct constitutional framework and would prevent core political expression from being denied the protection of the First Amendment.

. It should be noted that the respondent in Doe v. Reed made the same argument that the majority opinion does here, namely that acting as a ballot initiative signatory was a legislative act not protected by the First Amendment because the Supreme Court of Washington had declared it to be so. As the respondent’s brief before the Supreme Court in Doe stated, "The Washington Supreme Court has stated that the 'exercise of the initiative power is an exercise of the reserved power of the people to legislate’ and that '[in] approving an initiative measure, the people exercise the same power of sovereignty as the legislature does when enacting a statute.’ Amalgamated Transit Union Local 587 v. State, 142 Wash.2d 183, 11 P.3d 762, 779 (2000).” Brief of Respondent at 24, Doe v. Reed, 561 U.S. 186 (2010) (No. 09-559), 2010 WL 1250504. The Supreme Court in Doe, however, did not even address this argument, and thus did not find it dispositive; nor should this panel. If acting as a ballot initiative signatory is still a First Amendment activity despite its characterization as a "legislative act” by state law, then this same logic should apply to acting as a ballot initiative proponent.

. The majority opinion suggests that “[a] contrary conclusion would produce absurd results.” As the majority opinion explains:
If the mere fact that an activity is expressive meant that there was a First Amendment right to engage in that activity, irrespective of the context in which the activity occurs, then the First Amendment would protect the right of any voter to participate in the debates of the state legislature. After all, such debates are highly expressive in nature. Yet, no one would maintain that the First Amendment prohibits limiting participation in such debates to members of the state legislature.
Maj. Op. at 680. This hypothetical reveals the error in the majority opinion’s reasoning. No one would argue that the calculus for deten-mining whether the First Amendment protects a particular speech act is whether that act is expressive; this argument slays a mere straw man. Nor is legislative effect disposi-tive. As discussed above, the act in Carrigan was expressive in nature (and unprotected by the First Amendment) and the act in Doe was legislative in effect (and protected by the First Amendment). Neither fact was determinative. Instead, the correct test is whether the speech act is one that belongs to the individual and thus is constitutionally protected or one that stems from a governmental authority that has been democratically apportioned and thus can be limited by the entity which granted the authority. Acting as a legislator is a legislative activity. Acting as a ballot initiative signatory is a First Amendment activity.

. Doe was decided June 24, 2010, five months after Citizens United was handed down.